IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FIDELITY AND DEPOSIT CO. OF MARYLAND** | : | CIVIL ACITON |
| | : | |
| v. | : | No. 02-2674 |
| | : | |
| **ROYAL BANK OF PENNSYLVANIA** | : | |

**AFFIDAVIT**

I, James J. McSwiggan, being duly sworn according to law upon my oath, hereby depose and say:

1. I am the Chief Financial Officer and Treasurer of Royal Bank of Pennsylvania ("Royal") and as such I am fully familiar with the facts set forth in this Affidavit.

2. On February 15, 2002, I received a copy of Scott Waldman's letter to Jan Taminini, Assistant Chief Counsel, Commonwealth of Pennsylvania, Department of Public Works (a true and correct copy of Mr. Waldman's February 15, 2002, letter is attached to the Joint Stipulation of Facts as Exhibit "M"). This was the first correspondence received by Royal from anyone alleging that Restoration had not paid its subcontractors. Mr. Waldman's February 15, 2002, letter demands that the Commonwealth forward to Fidelity all additional payments due to Restoration under the window contract.

3. I was very surprised by Mr. Waldman's February 15, 2002, letter because both Royal and the Commonwealth had building experts conduct inspections of the Graterford window project before making any distributions to Restoration, and the inspections revealed that the project was being completed in compliance with the Window Contract. Furthermore, Restoration made every loan payment to Royal on a timely basis and was not in default of its loan in any way.

4. Royal immediately contacted Restoration to determine whether the allegations set forth in Mr. Waldman's February 15, 2002, letter were true. Restoration specifically denied that it was in

default of the Window Contract or the surety bonds issued by Fidelity, and Royal had no reason to disbelieve Restoration.

5. Based upon Mr. Waldman's February 15, 2002, letter demanding that the Commonwealth pay to Fidelity all additional payments due to Restoration under the Window Contract, I believed that despite the lack of any evidence of Restoration's default, that there was a substantial likelihood that the Commonwealth would stop making progress payments while it sorted out the competing claims of Royal and Fidelity.

6. Therefore, on February 15, 2002, I issued a memo to George McDonough, Royal's Vice-President of Loan Accounting, instructing him not to make any further advances under Restoration's line of credit and to place the loan on non-accrual status until the dispute with Fidelity was resolved.

7. As of February 22, 2002, Restoration was not in default under its loan, Restoration denied it was in default under the Window Contract or the bonds issued by Fidelity and Fidelity had not provided any evidence of Restoration's default whatsoever. Without such evidence, Royal did not believe the unsupported and self-serving allegations of the subcontractors, which were directly contradicted by Restoration and Royal's experience with Restoration.

_____
James J. McSwiggan, Vice-President
Chief Financial Officer and Treasurer of
Royal Bank of Pennsylvania.

Dated:

Sworn to and Subscribed
before me this         day
of                   , 2002.

_____