**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **FIDELITY AND DEPOSIT COMPANY** | : | |
| **OF MARYLAND** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **NO. 02-CV-2674** |
| **v.** | : | |
| | : | |
| **ROYAL BANK OF PENNSYLVANIA** | : | |
| | : | |
| **Defendant.** | : | |

**<u>ORDER</u>**

AND NOW, this ____ day of _____, 200__, upon consideration of defendant
Royal Bank of Pennsylvania's Motion for Summary Judgment, and the response of plaintiff
Fidelity and Deposit Company of Maryland thereto, it is hereby ORDERED and DECREED that
said Motion is DENIED.

**BY THE COURT:**

_____
**EDMUND V. LUDWIG, U.S.D.J.**

**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FIDELITY AND DEPOSIT COMPANY** | : | |
| **OF MARYLAND** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | **NO. 02-CV-2674** |
| **v.** | : | |
| | : | |
| **ROYAL BANK OF PENNSYLVANIA** | : | |
| | : | |
| **Defendant.** | : | |

**RESPONSE OF FIDELITY & DEPOSIT COMPANY**
**OF MARYLAND TO ROYAL BANK OF**
**PENNSYLVANIA'S MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Royal Bank's arguments in support of its Motion for Summary Judgment are essentially the same as those raised in its unsuccessful Motion to Dismiss.  Once again, Royal Bank concedes that a performing surety's equitable subrogation rights are superior to an assignee's UCC Article 9 rights, but asserts that F&D does not possess any equitable subrogation rights and, therefore, Royal Bank is entitled to retain the Funds.  However, Royal Bank's argument contains multiple fatal flaws and its current motion, just like its prior motion, must be denied.

## II.    LEGAL ARGUMENT

### A.    *Sundheim* Was Overruled and is Not Valid Precedent

Royal Bank quotes extensively from *Sundheim v. School District of Philadelphia*, 311 Pa. 90, 166 A. 365 (1933) in arguing that F&D has no equitable subrogation rights *vis a vis* the Commonwealth.  However, *Sundheim* was overruled 37 years ago by the Pennsylvania Supreme

Court in *Jacobs v. Northeastern Corp.*, 416 Pa. 417, 206 A.2d 49 (1965).[1]  In *Jacobs*, the court

stated that "the time is appropriate to reconsider our earlier decisions in this area," and adopted

the U.S. Supreme Court's ruling in *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132 (1962),

"contrary to the import of *Sundheim* and *DuBois*."  *Jacobs*, 206 A.2d 49, 52.

### B.    F&D is Equitably Subrogated to the Rights of the Commonwealth, RPSS and RPSS' Unpaid Subcontractors

*Sundheim* has since been cited occasionally but in a factual context and for legal

propositions entirely different than those intended by Royal Bank herein.  While *Sundheim* does

analyze a performing surety's equitable subrogation rights, even a cursory reading of the opinion

demonstrates that it is wholly distinguishable from the case herein:

> There was no obligation in the construction bonds or the
> construction contracts to pay labor and materialmen.  Therefore,
> the failure to pay labor and materialmen standing alone did not
> breach either of these instruments.

*Sundheim v. School District of Philadelphia*, 166 A. 365, 368.

Here, of course, the Contract between RPSS and the Commonwealth plainly provides that

RPSS is obligated to pay its subcontractors:

> **6.4:  Payment to Subcontractors.**  Performance by a
> Subcontractor in accordance with the provisions of the contract
> entitles the Subcontractor to payment from the party with which
> the Subcontractor has contracted.  For purposes of this section, the
> contract between the Contractor and Subcontractor is presumed to

---

[1]      *Jacobs* and its progeny are discussed at length in F&D's own summary judgment papers. For the sake of expediency, F&D will refrain from repeating its arguments and analysis herein, but will note that in *Jacobs*, the Supreme Court of Pennsylvania recognized that "it is manifestly clear that [there is] . . . an express undertaking upon the part of the contractor to pay labor and materialmen under the terms of the construction contract itself," *Jacobs*, 206 A.2d at 51, and further, that the surety's subrogation rights are "equally generated by the contractor's compliance with the statutory obligations to provide the bonds in question."  *Jacobs*, at 53.  The court ultimately held that, via equitable subrogation, the surety was entitled to recover the remaining contract funds, and that Article 9 of the UCC did not preclude such recovery.

incorporate the terms of the contract between the Contractor and
the Department.

. . .

**6.6:  Time for Subcontractor Payment.**  When a Subcontractor
has performed in accordance with the provision of the contract, the
Contractor shall pay to the Subcontractor, the full or proportional
amount received for each Subcontractor's work and material,
based on work completed or services provided under the contract,
within 14 days of receipt of a progress payment.

*SR*, Ex. "B."

Having established RPSS' obligation to pay its subcontractors on the Project, the

Contract goes on to provide that "it is within the Department's discretion to withhold payment

because of the Contractor's failure to pay subcontractors or suppliers."  *Contract*, 11.6(7); *SR*,

Ex. "B."

Moreover, the Bond itself provides that

. . . if the above Principal shall and will promptly pay or cause to
be paid all sums of money which may be due by the Principal or
any of its Subcontractors to any person, co-partnership, association
or corporation for all material furnished and labor supplied or
performed in the prosecution of the Work, whether or not the said
material or labor entered into and become parts of the work or
improvements contemplated, and for rental of equipment used, and
services rendered by public utilities in, or in connection with, the
prosecution of such Work, then this part of this obligation shall be
void; otherwise, it shall be and remain in full force and effect.

*Bond*, § B; *SR*, Ex. "C."

Accordingly, unlike the contract and bond in *Sundheim*, the Project documents herein not

only set forth RPSS' obligations to pay its subcontractors, but further empower the

Commonwealth to withhold unpaid contract proceeds in order to achieve that goal.

Moreover, Royal Bank has either ignored or forgotten the fact that F&D's equitable

subrogation rights arise not only from its payments to Project creditors, but also out of F&D's

actual performance on the Project.  F&D was obligated to complete the Project as a result of

RPSS' March 7, 2002 voluntary termination of all work thereon. *SR*, ¶ 27.  Such failure to

complete the Project is not only an obvious violation of the Contract, but also constitutes

alternate grounds for the Commonwealth to retain unpaid contract proceeds and apply them to

the completion of the Project.  Specifically, the Contract provides that payment may be withheld

upon "reasonable indication that the work will not be completed within the contract time" or

"unsatisfactory prosecution of the work by the Contractor."  *Contract*, 11.6(5)(6); *SR* Ex. "B."

In *Sundheim*, "there was no default in the contract to complete the buildings; they had been

accepted."  *Sundheim*, 166 A. at 367.

        In *In re L.H. Duncan & Sons*, 127 F.2d 640 (3d Cir. 1942), the Third Circuit recognized

the difference between so-called *Sundheim* cases (no obligation of principal to pay

subcontractors) and *Lancaster County National Bank, 304 Pa. 437, 155 A.859 (1931)* (later

*Jacobs*) cases (principal obligated to pay subcontractors):

> we think we must reach the conclusion that the case at bar on its
> facts is controlled by the *Lancaster Bank* case rather than the
> *Sundheim* and *DuBois* cases.  In the contract at bar, there was an
> express provision that the partners should make prompt payment in
> full for labor and materials.  There was a breach of the covenant in
> this respect by the contractors, and the surety made this breach
> good as it was required to do under its bond for the payment of
> materialmen and laborers. . . . We conclude that under the law of
> Pennsylvania . . . the surety was entitled to subrogation to the
> unpaid balance upon the contract.

*In re L.H. Duncan & Sons*, 127 F.2d 640, 644.

        Royal Bank's reliance upon *Sundheim* or any other case in which the Project documents

do not independently obligate the principal to pay its subcontractors, is completely inapposite

and has no bearing on the issues herein.  Instead, this Court must instead analyze this matter only

through the prism of those cases which are factually similar hereto, and which set forth

controlling Pennsylvania law.

Despite Royal Bank's assertions to the contrary, F&D is subrogated to the rights of

RPSS, its unpaid Project creditors, and the Commonwealth.  This principle was explained by the

First Circuit as follows:

> In this case there is confusion because the tendency is to think of
> the surety on Miller Act payment and performance bonds as
> standing in the shoes only of the entity it 'insures' – the contractor.
> So long as this one-dimensional concept prevails, logic compels
> the surety to be assessed as merely one of the contractor's
> creditors, and to be subject to the system of priorities rationalized
> by the Uniform Commercial Code.  But the surety in cases like this
> undertakes duties which entitle it to step into three sets of shoes.
> When, on default of the contractor, it pays all the bills of the job to
> date and completes the job, it stands in the shoes of the contractor
> insofar as there are receivables due it; in the shoes of laborers and
> material men who have been paid by the surety – who may have
> had liens; and, not least, in the shoes of the government, for whom
> the job was completed.

*National Shawmut Bank of Boston v. New Amsterdam Casualty Co., Inc.*, 411 F.2d 843, 844-845

(1st Cir. 1969).

The first few payment bond claims submitted to F&D referenced failures by RPSS to pay

its invoices as early as October and November, 2001.  *SR* ¶¶ 17, 18, Ex. "I," "J."  These failures

pre-date by several months RPSS' submission of the payment application upon which the

Commonwealth's release of the Funds was based.  *SR* ¶ 16, Ex. "H."  Accordingly, the

Commonwealth, and through subrogation F&D, were entitled to retain the Funds and apply them

to RPSS' indebtedness on the Project.

### C.    The Particular Dates of Claim Payments By F&D Do
### <u>Not Determine F&D's Ultimate Right to Recover the Funds</u>

Royal Bank also attempts to argue[2] that the fact that the first claim payment made by

F&D occurred after Royal Bank wrongfully deposited the Funds, despite its clear notice of

F&D's claim thereto, somehow precludes F&D's assertion of its subrogation rights.  This

position has no legal basis.  In *U.S. v. Commonwealth of Pennsylvania Department of Highways*,

349 F. Supp. 1370 (E.D. Pa. 1972), the Eastern District addressed this very issue.  Holding that a

performing surety was equitably subrogated to contract funds in the Commonwealth's

possession, the Court found that when the principals "did not promptly pay the labor and

material claims arising from the contracts, National, as surety of these contracts, became legally

liable for the payments of those claims and, thus, was entitled to subrogation and, therefore,

entitled to the money in the possession of the State, which was the balance due on the" bonded

contracts.  *U.S. v. Commonwealth*, 349 F. Supp. 1370, 1379.

In so holding, the Court agreed with the decision in *Atlantic Refining Co. v. Continental*

*Casualty Co.*, 183 F. Supp. 478, 482-483 (W.D. Pa. 1960), where the Western District was "of

the opinion that a failure by the Contractor here to pay for labor and materials is just as much a

failure to perform and carry out the terms of the contract as an abandonment of the work would

have been."  "Moreover, the subrogation right relates back to the date of the contract," which in

this case predates Royal Bank's receipt of the Funds by one year.  *U.S. v. Commonwealth 349 F.*

*Supp.* at 1382.  The court specifically stated that :

---

[2]    Royal Bank cites to the 85-year-old decision in *C.G. Gawthrop Co. v. Fibre Specialty Co.*, 257 Pa. 3349, 101 A. 760 (1917) in support of its claim that the date of F&D's first claim payment controls the determination of the existence of F&D's subrogation rights.  That case is entirely distinguishable from the situation at bar, and deals with a surety's claim against a bankrupt estate for funds that were not connected with the bonded relationship.

> By virtue of this breach, National, as surety on the six contracts, became legally liable for payment of the claims of the laborers and materialmen.  The liability resulted in National's equitable subrogation to the fund which was less than the payments which National made on the claims under each contract.  The equitable subrogation created rights in National to the fund which were superior to and apart from other creditors of the [principals] in that the laborers and the materialmen had a right to be paid for their work on the contracts.  Claimants could sue the surety under the payment bond for this money; the State could have used the fund to pay the laborers and materialmen except for the bond; and the surety, having paid the claimants to the fund in the hands of the State, would be entitled to the fund to the extent it is reimbursed surety for the payments it had made to said laborers and materialmen.

*U.S. v. Commonwealth*, 349 F. Supp. at 1381-1382.

Here, RPSS failed to meet its contractual obligation to pay its subcontractors as early as October and November, 2001, and perhaps even earlier.  *SR*, ¶¶ 17, 18, Ex. "I," "J."  Moreover, as of February 11, 2002, prior to the Commonwealth's release and Royal Bank's receipt of the Funds, F&D had notified the Commonwealth of its receipt of at least six payment bond claims, totalling in excess of $430,000.  *SR*, ¶ 22, Ex. "L."  Accordingly, F&D's subrogation rights therefore vested at least four months[3] before Royal Bank deposited the Funds, with notice to Royal Bank prior thereto.

Royal Bank's entire Motion for Summary Judgment is premised upon its theory that this case is governed under Article 9 of the UCC because F&D "does not have a valid equitable subrogation claim against" Royal Bank.  *See* Royal Bank's November 29, 2002 Brief, p. 5. However, as set forth herein, and in F&D's own Motion for Summary Judgment, F&D is

---

[3]    Even if the date when F&D first suffered a loss or expense relating to the Bond is considered to be the vesting date, then F&D clearly began to incur expenses prior to the Commonwealth's issuance and Royal Bank's receipt of the Funds, by virtue of F&D's engagement of the undersigned, whose work on this matter is documented in F&D's own motion as occurring on February 14, 2002, and actually began several days earlier.  *SR,* ¶ 23, Ex. "M;" s*ee* F&D's November 27, 2002 Memorandum of Law, p. 3, n. 1.

equitably subrogated to the rights of its principal, the bond claimants and the Commonwealth.

Therefore, pursuant to *Jacobs* and *Pearlman*, Article 9 has no application herein and F&D is

entitled to receive the Funds despite Royal Bank's purported "secured" status.

### III.     CONCLUSION

For all of the reasons set forth above, given that F&D is equitably subrogated to the rights

of RPSS, its subcontractors and the Commonwealth, and in light of the undisputed law of

Pennsylvania regarding a performing surety's priority in Project funds, Fidelity and Deposit

Company of Maryland respectfully requests that this Honorable Court deny Royal Bank of

Pennsylvania's Motion for Summary Judgment herein.

Respectfully submitted,

WOLF, BLOCK, SCHORR AND SOLIS-COHEN, LLP


By: _____
    Scott M. Waldman
    1650 Arch Street, 22nd Floor
    Philadelphia, PA  19103
    (215) 977-2074

    *Attorney for Plaintiff,*
    *Fidelity and Deposit Company of Maryland*


Date:  December 27, 2002

## <u>CERTIFICATE OF SERVICE</u>

I, Scott M. Waldman**,** hereby certify that today I caused a true and correct copy of the

foregoing Response of Fidelity & Deposit Company of Maryland to Royal Bank of

Pennsylvania's Motion For Summary Judgment, to be sent via hand delivery, as follows:

        Richard S. Hannye, Esquire
        Royal Bank of Pennsylvania
        732 Montgomery Avenue
        Narberth,