IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIDELITY AND DEPOSIT CO.　　　　:　　CIVIL ACTION
OF MARYLAND　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　v.　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　:　　No. 02-2674
ROYAL BANK OF PENNSYLVANIA　　:

**MEMORANDUM**

Ludwig, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　　May 1, 2003

Plaintiff Fidelity and Deposit Company of Maryland and defendant Royal Bank cross-move for summary judgment. Fed. R. Civ. P. 56.[1] Jurisdiction is diversity, 28 U.S.C. § 1332, and Pennsylvania law governs substantive issues.[2] Both parties' motions will be denied.

This is an action for conversion, unjust enrichment and tortious interference in which plaintiff surety company asserts entitlement to funds paid defendant, a secured creditor, by the Commonwealth of Pennsylvania on account of a construction contract. The contractor was the surety's principal and the bank's debtor.

The following is not in dispute: The Pennsylvania Public Works Contractor's Bond Law of 1967, 8 P.S. § 191, *et seq.*, requires a prime contractor to furnish both performance and payment bonds to the contracting body before a public works

---

[1] Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. All evidentiary inferences are drawn in favor of the non-movant. Dun & Bradstreet Software Services, Inc. v. Grace Consulting, Inc., 307 F.3d 197, 205 (3d Cir. 2002).

[2] Burgh v. Borough Council of the Borough of Montrose, 251 F.3d 465, 473 (3d. Cir. 2001).

contract exceeding $5,000 may be awarded.  On February 1, 2001, plaintiff F&D issued the requisite bond in favor of the Commonwealth, as obligee, in connection with a contract to be awarded to Restoration & Preservation Systems & Services, Inc. On February 2, 2001, RPSS executed an agreement of indemnity in favor of F&D and thereafter contracted with the Commonwealth to do general construction work and window and brick replacement at the State Correctional Institution at Graterford. The contract price was $1,748,000.

In July 2001, RPSS closed with defendant Royal Bank on a non-revolving loan in the amount of $522,100 – with a 75 percent SBA guarantee -- and gave an assignment of claims to the bank, which contained a joinder by the Commonwealth.

As of July 27, 2001, in accordance with Article 9[3] of the Uniform Commercial Code,  Royal Bank duly filed the financing statements necessary to perfect its security interest.  In a letter dated August 8, 2001, F&D, through Zurich North American Surety, acknowledged the agreements between the bank and RPSS "[s]ubject to our rights as surety in the event of default by [RPSS] . . . ."   In September 2001, Royal Bank changed the RPSS loan from "non-revolving" to "revolving."  On January 12, 2002, RPSS submitted to the Commonwealth a "Recapitulation of Contractor's Application for Payment," which amended the cost of the project.

On January 18, 2002, Hope's Windows, Inc., an RPSS subcontractor, wrote to F&D that RPSS had not paid certain invoices – and it was therefore making a

---

[3] Under the Pennsylvania Uniform Commercial Code, unless specifically excepted, a financing statement must be filed to perfect al security interest. 13 Pa. C.S.A. § 9312.

surety bond claim. On January 22, 2002, Hawk Construction Products, Inc., another subcontractor, wrote the Commonwealth that RPSS had not paid its invoices. On January 28, 2002, the Commonwealth, by letter, advised Hawk of the surety bond and copied F&D and Royal Bank. Also on January 28, 2002, the last advance was made by Royal Bank – $197,639 – to RPSS.

On February 11, 2002, F&D advised the Commonwealth by fax of the pending claims and further that it was "providing notice of its expectation that its interest in contract funds due or to become due under the provisions of the pertinent contract agreement be protected fully by the proper application of funds to the Performance [sic] of said contract and to the payment of obligations due or to become due to laborers, material supplier, and subcontractors in the prosecution of work performed. . . ."

On February 15, 2002, F&D's attorney faxed the Commonwealth that "the Commonwealth, pursuant to an assignment dated July 25, 2001, has been paying all contract proceeds to Royal Bank of Pennsylvania. However, in conjunction with the issuance of the subject bond, RPSS entered into an Agreement of Indemnity with F&D on February 2, 2001, which now operates to render the assignment to the Bank invalid." Also, on February 15, 2002, Royal Bank vice president James McSwiggan circulated an inter-bank memorandum relating to the RPSS loan that stated, in bold, capital letters, as follows:

> ANY CHECKS RECEIVED FROM THE COMMONWEALTH OF PENNSYLVANIA IN CONNECTION WITH THIS LOAN SHOULD BE DEPOSITED WITHIN 30 SECONDS AND IN A MANNER TO EXPEDITE COLLECTION AS QUICKLY AS POSSIBLE.

A Commonwealth payment of $222,267 dated February 15, 2002 was received and deposited by Royal Bank on February 22, 2002.

On February 26, 2002, F&D made its first surety bond payment. On March 7, 2002, RPSS voluntarily terminated its work on the project. Eventually, F&D paid in excess of $500,000 in satisfaction of surety bond claims. Royal Bank refused F&D's demand for the $222,267 received from the Commonwealth.

## Discussion

F&D's position is that under principles of equitable subrogation and because of the contractual indemnification given by RPSS, its right to the funds is superior to that of the bank. It also asserts that the change of the bank loan to RPSS from non-revolving to revolving, without notice to F&D, substantially prejudiced F&D – and Royal Bank should not be allowed to profit from it.

Royal Bank's defense is that 1) F&D's equitable subrogation claim is not enforceable because the surety did not pay the subcontractors until after the Commonwealth remitted to Royal Bank; 2) F&D's interest under a general unsecured surety bond is inferior to the bank's perfected security interest; 3) the conversion claim does not lie because F&D did not have a possessory interest in the Commonwealth's payments; 4) Royal Bank was not unjustly enriched because it had a perfected first lien under the UCC; and 5) the tortious interference claim is untenable because Royal Bank had "every privilege and justification" for accepting the payment. Defendant's "Brief in Support of Motion for Summary Judgment" at 9.

A.  Equitable and Statutory Subrogation

Had the Commonwealth retained the funds at issue, F&D would appear to have been entitled to receive them as surety and, therefore, equitable subrogatee under a bond required by statute. A surety that has completed a public construction contract or paid subcontractors and materialmen is equitably subrogated *pro tanto* to the rights of the defaulted contractor. See Pearlman v. Reliance Insurance Co., 371 U.S. 132, 136 (1962); Atlantic Refining Co. v. Continental Cas. Co. 183 F.Supp. 478 (W.D.Pa. 1960). Where a public agency owes a contractor monies for work done, the claim of the contractor's surety has priority over the claims of the contractor's general or judgment creditors and trustee in bankruptcy. See Jacobs v. Northeastern Corp., 416 Pa. 417, 424-26, 206 A.2d 49, 53-54 (1965) (paying sureties entitled under equitable subrogation to funds withheld from defaulting contractor by Commonwealth); Penn Equipment & Tool Corp. v. Chatham 90 Inc., 45 Pa. D. & C.3d 677, 1986 WL 21315 (Pa.Com.Pl. 1986), *aff'd,* Penn Equipment & Tool Corp. v. Chatham 90, Inc., 115 Pa.Cmwlth. 509, 540 A.2d 986 (Pa.Cmwlth. 1988), *allocatur denied,* Penn Equipment & Tool Corp. v. Chatham 90, Inc., 520 Pa. 621, 554 A.2d 512 (Pa. 1989). Recordation of notice of the suretyship, such as the filing of a financial statement under the UCC, is not a prerequisite. See Jacobs, 206 A.2d at 54.

Subrogation adheres when the surety has paid claims or incurred loss by reason of the suretyship. Hagans v. Constitution State Service Co., 455 Pa.Super. 231, 240, 687 A.2d 1145, 1149 (1997); U.S. Fidelity and Guar. Co. v. United Penn Bank, 362 Pa. Super. 440, 448, 524 A.2d 958, 962 (1987), *allocatur denied,* U.S.

5

Fidelity and Guar. Co. v. United Penn Bank, 517 Pa. 609 (1987). In Jacobs, vis-a-vis the claim of the contractor's secured lender, the surety was held to be subrogated to the Pa. General State Authority's retainage for payments previously made on behalf of its principal. 206 A.2d at 54.

Here, however, the Commonwealth's payment to Royal Bank deposited February 22, 2002 predated F&D's first suretyship payment on February 26, 2002. Once the fund was relinquished to the bank, there is no authority that would apply subrogation as against a secured creditor without notice of the surety's claim.

Some inferential support exists for the proposition, espoused by F&D, that a fund recipient that takes with notice of the surety's claim will not defeat subrogation. In Maryland Casualty Co. v. National Bank of Germantown and Trust Co., 320 Pa. 129 (1936), the contractor remitted to its lender payments it had received for work done. The surety was not accorded subrogation because the bank was unaware of the surety's claim. Id. at 134-136. See also Jacobs, 206 A.2d at 53-54.

On the question of notice, there is a triable issue of fact as between the parties in this case. The stipulated record contains letters notifying the bank of RPSS' default and the subcontractors' claims – prior to the bank's receipt of the Commonwealth's payment. F&D also proffers that on February 14, 2002 its counsel spoke to a bank representative to the same effect. Moreover, there is the bank officer's "DEPOSIT WITHIN 30 SECONDS" memorandum of February 15, 2002. On the other hand, an affidavit from the bank officer who authored the memorandum states that the bank had no knowledge of RPSS' default at the time in

question.  It cannot be said with certainty that if the bank had notice, F&D does not have an enforceable subrogation claim.  Therefore, summary judgment may not be granted; and the issue of notice must be submitted to a factfinder.

      B.      Conversion; Unjust Enrichment; Tortious Interference

As between the competing claims of F&D and Royal Bank, all of the issues may turn on whether the bank knew of its debtor's default under the surety bond at the time when it received and deposited the funds remitted by the Commonwealth.  If it had such knowledge and F&D's claim is shown to have been superior to that of Royal Bank, it follows that F&D had a constructive possessory interest in the funds – an interest conceivably subject to conversion, unjust enrichment, and tortious interference on the bank's part.  Otherwise, if as the bank contends, it had "every privilege and justification" for accepting the payment and refusing F&D's demand, there is no theory under which F&D can prevail.  Defendant's "Brief in Support of Motion for Summary Judgment" at 9.  At this juncture, given that summary judgment requires a ruling as a matter of law, Royal Bank's motion for summary judgment will also be denied.

                                                                  Edmund V. Ludwig, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FIDELITY AND DEPOSIT CO. OF MARYLAND | : : : | CIVIL ACTION |
| v. | : : | |
| ROYAL BANK OF PENNSYLVANIA | : | No. 02-2674 |

## ORDER

AND NOW this 1st day of May, 2003, the summary judgment motions of plaintiff Fidelity and Deposit Company of Maryland and of defendant Royal Bank of Pennsylvania are denied. A Memorandum accompanies this order.

_____
Edmund V. Ludwig, J.